UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALEXIS YOUNGBERG,

        Plaintiff,

v.

MICHAEL McKEOUGH, NINA McKEOUGH,
JACK McKEOUGH, the ESTATE OF ROBERT
JACK JEROVSEK, and JACK L. JEROVSEK,
as personal representative of the ESTATE OF
ROBERT JACK JEROVSEK,

        Defendants,

and

JACK L. JEROVSEK, as personal representative
of THE ESTATE OF ROBERT JACK JEROVSEK,

        Cross-Plaintiff,

v.

MICHAEL McKEOUGH, NINA McKEOUGH,
and JACK McKEOUGH,

        Cross-Defendants,

and

JACK L. JEROVSEK, as personal representative
of THE ESTATE OF ROBERT JACK JEROVSEK,

        Counter-Plaintiff,

v.

ALEXIS YOUNGBERG,

        Counter-Defendant,

File No.  1:10-CV-916

HON. ROBERT HOLMES BELL

and

JACK L. JEROVSEK, as personal representative
of THE ESTATE OF ROBERT JACK JEROVSEK,

                Third-Party Plaintiff,

v.

MARK YOUNGBERG,

                Third-Party Defendant.

_____/

## **O P I N I O N**

This personal injury action is before the Court on Counter-Defendant Alexis Youngberg and Third-Party Defendant Mark Youngberg's motion for summary judgment on the counterclaim and third-party claim filed against them by Counter-Plaintiff/Third-Party Plaintiff Jack L. Jerovsek as personal representative of the Estate of Robert Jack Jerovsek (Dkt. No. 64) ("Jerovsek"),  on Plaintiff Alexis Youngberg's motion for partial summary judgment on her claim against Defendants Jerovsek and the Estate of Robert Jack Jerovsek (hereinafter jointly referred to as "Jerovsek") (Dkt. No. 75), and on Defendant Jerovsek's cross-motion for partial summary judgment on Plaintiff Alexis Youngberg's admiralty claims (Dkt. No. 79).  For the reasons that follow, the motions filed by Alexis Youngberg and Mark Youngberg will be denied, and the cross-motion filed by Jerovsek will be granted in part and denied in part.

## I.

This diversity personal injury action arises out of a watercraft collision on Spring Lake

on Labor Day weekend.  On September 5, 2009, at approximately 7:00 p.m., there was a collision between a twin propeller 700-horsepower 26-foot Mastercraft X-80 wake boat (the "Mastercraft") owned by Defendants Michael and Nina McKeough,  and a 200-horsepower 18-foot Sea-Doo GTX Wake Edition personal watercraft ("Sea-Doo" or "PWC") owned by Third-Party Defendant Mark Youngberg.  At the time of the collision, the Mastercraft was driven by Defendant Jack McKeough ("Jack") (then fourteen years old).  Jack had four teenage passengers on the Mastercraft, Megan Bouman, Jacob Bouman, Sandi Fredricks, and Connor Davis.  The Sea-Doo was being driven by Defendant Robert Jack Jerovsek ("Robbie") (then 15 years old).  Mark Youngberg's daughter Alexis Youngberg ("Alexis") (then 16 years old) and Kaitlin Van Dam (then 23 years old) were riding on the Sea-Doo behind Robbie.  The Mastercraft ran over the Sea-Doo from behind.  Robbie died as a result of the collision, and Alexis's left leg was amputated below the knee.

Alexis filed this action alleging negligence on the part of Jack, his parents, Michael and Nina McKeough, and Jerovsek.  Jerovsek filed a cross-claim against Jack and his parents, a counter-claim against Alexis, and a third-party claim against Mark Youngberg.

## II.

The Federal Rules of Civil Procedure require the Court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In considering a motion for summary judgment, "the district court must construe the evidence and draw all reasonable

inferences in favor of the nonmoving party." *Martin v. Cincinnati Gas and Elec. Co.*, 561 F.3d 439, 443 (6th Cir. 2009) (citing *Jones v. Potter*, 488 F.3d 397, 403 (6th Cir. 2007)).

### III.

Alexis and Mark Youngberg move for summary judgment on the negligence claims asserted against them in Jerovsek's counter-claim and third-party complaint based on their contention that Jerovsek has not identified the breach of any duties under Michigan law.

The first element of a prima facie negligence claim[1] is that the defendant owed a duty to the plaintiff.  "'Duty' is a legally recognized obligation to conform to a particular standard of conduct toward another so as to avoid unreasonable risk of harm." *Cummins v. Robinson Twp.*, 283 Mich. App. 677, 692 (2009).  Whether a duty exists is ordinarily a question of law for the court.  *Moning v. Alfono*, 400 Mich. 425, 436-437 (1977) ("[D]uty is a question of law for the court to decide when there are no genuine issues of material fact.").

Jerovsek alleges in his second counter-complaint against Alexis Youngberg that:

> As the person in control of the PWC, Alexis Youngberg owed Robert Jack Jerovsek the duty to ensure that the PWC was not operated on Spring Lake when the lake was too crowded for safe operation of the PWC and/or when fourteen-year-old Jack McKeough was operating the Mastercraft in a reckless, negligent, or grossly negligent manner on Spring Lake endangering the lives

---

[1]In order to establish a prima facie case of negligence, a plaintiff must prove:

(1) that the defendant owed a duty to the plaintiff; (2) that the defendant breached that duty; (3) that the defendant's breach of duty was a proximate cause of the plaintiff's damages; and (4) that the plaintiff suffered damages.

*Terry v. City of Detroit*, 226 Mich. App. 418, 423-24 (1997) (quoting *Baker v. Arbor Drugs, Inc.*, 215 Mich. App. 198, 203 (1996)).

of anyone else on Spring Lake.

(Dkt. No. 48, ¶ 69.)  Jervosek alleges in his second third-party complaint against Mark

Youngberg that:

> Mark Youngberg breached the following duties that he owed to Robert Jack Jerovsek:
>
> (a)    the duty to contact Robert Jack Jerovsek's parents before allowing him to operate the PWC on Spring Lake;
> (b)    the duty to ascertain the traffic conditions on Spring Lake before allowing three teenagers to operate the PWC on Spring Lake;
> (c)    the duty to not allow Alexis Youngberg exclusive control over the PWC; and
> (d)    the duty to act as a reasonably prudent PWC owner under the conditions then and there existing.

(Dkt. No. 48, ¶ 82.)  The Youngbergs contend that they are entitled to summary judgment

because none of the duties asserted by Jervosek exist under Michigan law.

In Michigan, tort duties may arise by statute, by a special relationship between the

parties,[2] or by the common law requirement to use due care in undertakings.  *Loweke v. Ann*

*Arbor Ceiling & Partition Co.*, — N.W.2d —, 2011 WL 2184294 (Mich. June 6, 2011).

Jerovsek does not assert that either of the Youngbergs violated any statutory duties or any

established special relationships.  Accordingly, the breach of duty in this case arises, if at all,

under the common law.

---

[2]Special relationships that give rise to a duty to protect include the relationship between a common carrier and its passengers, an innkeeper and his guests, and an employer and his employees.  *Williams v. Cunningham Drug Stores, Inc.*, 429 Mich. 495, 499, 418 N.W.2d 381, 383 (1988).  "The rationale behind imposing a duty to protect in these special relationships is based on control.  In each situation one person entrusts himself to the control and protection of another, with a consequent loss of control to protect himself."  *Id.*

The common law "imposes on every person engaged in the prosecution of any undertaking an obligation to use due care, or to so govern his actions as not to unreasonably endanger the person or property of others." *Heaton v. Benton Const. Co.*, 286 Mich. App. 528, 536 (2009) (quoting *Clark v. Dalman*, 379 Mich. 251, 261 (1967)). "Duty is essentially a question of whether the relationship between the actor and the injured person gives rise to any legal obligation on the actor's part for the benefit of the injured person." *Moning*, 400 Mich. at 439.

In Michigan, "the question whether the defendant owes an actionable legal duty to the plaintiff is one of law which the court decides after assessing the competing policy considerations for and against recognizing the asserted duty." *In re Certified Question from Fourteenth Dist. Ct. of Appeals of Tex.*, 479 Mich. 498, 504-05 (2007) (quoting *Friedman v. Dozorc*, 412 Mich. 1, 22 (1981)). The inquiry involves consideration of a number of variables, including:

> the (1) foreseeability of the harm, (2) degree of certainty of injury, (3) existence of a relationship between the parties involved, (4) closeness of connection between the conduct and injury, (5) moral blame attached to the conduct, (6) policy of preventing future harm, and (7) the burdens and consequences of imposing a duty and the resulting liability for breach.

*Terry v. City of Detroit*, 226 Mich. App. 418, 424 (1997) (citing *Buczkowski v. McKay*, 441 Mich. 96, 101 (1992)). In other words, "duty" is "an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection." *Buczkowski*, 441 Mich. at 100-101 (quoting Prosser & Keeton, Torts (5th ed) § 53, p. 358).

If there are factual circumstances that give rise to the duty, the existence of those facts must be determined by a jury. *Farwell v. Keaton*, 396 Mich. 281, 286 (1976).

The Youngbergs may be correct in their assertion that none of Jerovsek's individual allegations, considered in isolation, describes a recognized legal duty. Jerovsek's position, however, is that the Youngberg's duty to Robbie arises out of the various factors operating in tandem. These factors include the Youngberg's general knowledge that Spring Lake was dangerous during weekends and holidays, and their specific knowledge that Jack McKeough was an unsafe operator of his family's Mastercraft. Jerovsek has also referenced Robbie's lack of knowledge of the dangers, as well as his comparative youth[3] and lack of experience, and the Youngbergs' failure to apply the same rules or warnings to Robbie that were standard within their own family.

The Court agrees that it is proper to consider multiple factors in determining whether the Youngbergs owed Robbie a legal duty. Jerovsek has come forward with some evidence in support of his allegations regarding the basis for such a duty. The Court cannot say that these factors, considered together, could never satisfy the *Buczkowski* policy considerations. Nevertheless, on the limited record currently available, the Court cannot determine what weight to give to any of the factors, or whether there are any underlying issues of fact that need to be determined by a jury. The Court cannot find, on this record, that the Youngbergs owed no legal duty to Robbie as a matter of law. The question of legal duty would benefit

---

[3]As noted in *Buczkowski*, children are "a class historically protected under the law of torts." 441 Mich. at 103 n.8.

from additional factual development.  The Court will accordingly deny the Youngbergs'

motion for summary judgment at this time, without prejudice to their ability to raise the issue

again at the close of proofs.

## IV.

Plaintiff Alexis Youngberg has alleged that Robbie breached his duty to operate the

Sea-Doo carefully, reasonably, and in accordance with state and federal law by:

(a)     Suddenly slowing the speed of the PWC and/or turning or changing
        directions in front of the Mastercraft;[4]

(b)     Failing to maintain course and speed while being overtaken; and

(c)     Otherwise driving the PWC in such a manner as to violate Inland
        Navigation Rules, including rules 5, 6, 7, 8, and 17; 33 C.F.R. §§ 83.05,
        .06, .07, .08, and .17.

(Dkt. No. 31, Second Am. Compl. ¶ 65.)  Plaintiff requests partial summary judgment in her

favor declaring and adjudicating that Robbie was negligent, that his acts or omissions were

at least one of the causes of the accident, and that Jerovsek is jointly and severally liable with

any other parties sharing fault for the crash for Plaintiff's injuries.

There is no dispute that Spring Lake is a navigable waterway.  Because this case

involves a water craft collision on navigable waters,  federal maritime law supplements the

ordinary state law rules of negligence.  *See Yamaha Motor Corp. v. Calhoun*, 516 U.S. 199,

---

[4]At oral argument, Plaintiff withdrew her argument that Robbie turned or changed
directions in front of the Mastercraft.  Plaintiff explained that the focus of her negligence
argument is on Robbie's conduct in suddenly slowing down the Sea-Doo in front of the
Mastercraft.

206, 214-16 (1996); *see also Foremost Ins. Co. v. Richardson*, 457 U.S. 668, 674-75 (1982) (holding that a complaint alleging a collision between two pleasure boats on navigable waters stated a claim within the court's admiralty jurisdiction).  Under maritime law, liability is joint and several, such that anyone bearing any fault for the collision is 100% responsible for the resulting damages.  *Edmonds v. Compagnie Generale Transatlantique*, 443 U.S. 256, 260 (1979).  In addition, if there is a violation of the Inland Navigational Rules,[5] the *Pennsylvania* Rule[6] provides that  negligence and causation are presumed, and the burden of proof is reversed.  Where the *Pennsylvania* Rule applies, to avoid liability, the operator of the offending vessel must prove that his actions could not have been a cause of the collision.  *The Pennsylvania*, 86 U.S. (19 Wall.) 125, 136 (1874).

The relevant facts occurred during the couple of minutes that elapsed between the time the Sea-Doo and the Mastercraft left the McKeough dock and the collision.  Neither

---

[5]The Inland Navigational Rules are statutory rules that "apply to all vessels upon the inland waters of the United States."  *Matheny v. Tenn. Valley Auth.*, 557 F.3d 311, 317 n.3 (6th Cir. 2009) (quoting 33 U.S.C. § 2001).  They supply the "Rules of the Road" governing navigation on inland waters.  *Id.*

[6]The *Pennsylvania* Rule provides:

[W]hen, as in this case, a ship at the time of a collision is in actual violation of a statutory rule intended to prevent collisions, it is no more than a reasonable presumption that the fault, if not the sole cause, was at least a contributory cause of the disaster.  In such a case the burden rests upon the ship of showing not merely that her fault might not have been one of the causes, or that it probably was not, but that it could not have been.

*The Pennsylvania*, 86 U.S. (19 Wall.) 125, 136 (1874).

Alexis nor Kaitlin has any recollection of the accident.  (Alexis Youngberg Dep. 80-83, 87-88; Kaitlin Van Dam Dep. 40-42, 46).  Jack testified that immediately before the collision he was in full throttle, traveling at approximately fifty miles per hour.  He turned around to grab a magazine that had flown back.  He had seen the Sea-Doo once out of his peripheral vision, and did not see it again until he contacted it or was inches from it.  (Jack McKeough Dep. 88-89, 94, 125-28, 132, 136.)  Three of the Mastercraft's teenage passengers testified that the Sea-Doo passed the Mastercraft, maneuvered in front of it, and then abruptly slowed down.  (Megan Bouman Dep 32-41; Jacob Bouman Dep. 33-48; Sandi Fredricks Dep. 17-32.)

David Hulings witnessed the collision from his boat.  He testified that the Mastercraft performed a figure eight approximately 500 feet in front of him.  The  Sea-Doo went through the wake of the Mastercraft.  On completing its figure eight, the Mastercraft pulled into the wake of the Sea-Doo, overtook the Sea-Doo, and went up over it.  (Hulings Dep. 22-23, 25-26.)  According to David Hulings, the driver of the Mastercraft was turned around, facing the back of the boat, and the Sea-Doo did not change direction or speed.  (Hulings Dep. 36-37.)

The Ottawa County Sheriff made a determination, based on the Sea-Doo's computer, that the Sea-Doo was at an idle for the last six seconds of operation.  (Sgt. Koeman, Suppl. Dictation, Pl. Ex. K).  Mark Youngberg testified that if the Sea-Doo was in gear, idle speed was five miles per hour.  (M. Youngberg Dep. 210-11.)

Jerovsek's accident reconstruction expert, Dennis D. Skogen, determined that thirteen seconds prior to the collision, the Sea-Doo was traveling at 59 miles per hour, and that for the last six seconds before the collision, its engine was idling and it was traveling at approximately four miles per hour.  (Def. Ex. F2, Skogen Rpt. 4.)

Alexis alleges that Robbie violated Inland Navigational Rules 5, 6, 7, 8, and 17.  For purposes of this motion, however, Alexis requests summary judgment only on her contention that Robbie violated Rule 17.  Jerovsek opposes Plaintiff's motion, and has requested the Court to enter summary judgment in its favor on Plaintiff's admiralty claims.       Alexis contends that Jack McKeough, the operator of the Mastercraft, violated Inland Navigational Rule 13,[7] which requires any vessel overtaking any other vessel to keep out of the way of the vessel being overtaken, and that Robbie violated Rule 17(a)(1),[8] which required him to keep his course and speed when he was being overtaken.  Alexis contends that because the evidence conclusively establishes that Robbie suddenly slowed down, he did not maintain his speed while being overtaken, and accordingly violated Rule 17(a)(1).

Jerovsek contends that Rule 17 does not apply because Jack failed to signal his intention to overtake the Sea-Doo.  Inland Navigational Rule 34 provides that in overtaking situations, the overtaking vessel shall indicate her intention to overtake by giving a warning

---

[7]Rule 13 provides that "any vessel overtaking any other shall keep out of the way of the vessel being overtaken."  33 U.S.C. § 2013; 33 C.F.R. § 83.13.

[8]Rule 17(a)(1) provides that "Where one of two vessels is to keep out of the way, the other shall keep her course and speed."  33 U.S.C. § 2017(a)(1); 33 C.F.R. § 83.17(a)(1).

signal.[9]  An overtaken vessel's duty to maintain course and speed does not arise until the overtaking vessel has made its presence known by signaling its intention to pass.  *The Industry*, 29 F.2d 29, 30 (2nd Cir. 1928) ("[I]t is only after the exchange of signals that the duty of the vessel ahead begins at all.").

 This is besides the only reasonable construction. The vessel ahead is usually overtaken because she has less speed and cannot avoid it; the overtaking vessel may always slow down and keep astern.  The rules provide for no signal by which the overtaken vessel may declare her purpose to change her course and speed, and, if she is bound to keep both, she is, as it were, frozen in her navigation from the moment that the risk of collision begins, merely because the overtaking vessel begins to overhaul her, something which it is not always easy to ascertain.  Thus she may be compelled to abandon her intended destination, or to pass her berth, merely because the overtaking vessel insists upon passing.  It is therefore fair to suppose that her consent is required, not alone because she may think the passing dangerous in any case, but also because she may need to change her course for her own purposes to which the interests of the overtaking vessel can hardly be considered equal.  The latter should therefore be obliged to hold herself in check against unexpected changes of course, and be prepared to meet them, until by the consent of the vessel ahead she gets assurance that it is convenient for her to hold on.

---

[9]Rule 34 provides in pertinent part:

(c) Overtaking situations. When in sight of one another:

(1) A power-driven vessel intending to overtake another power-driven vessel shall indicate her intention by the following signals on her whistle: one short blast to mean "I intend to overtake you on your starboard side"; two short blasts to mean "I intend to overtake you on your port side"; and

(2) The power-driven vessel about to be overtaken shall, if in agreement, sound a similar sound signal. If in doubt she shall sound the danger signal prescribed in paragraph (d).

33 U.S.C. § 2034; 33 C.F.R. § 83.34.

*Id. See also The M.J. Rudolph*, 292 F. 740, 743 (2nd Cir. 1923) ("[I]t is not the duty of an overtaken vessel to look behind, or to give warning to a vessel behind her, and which has not herself given warning of her presence, before she changes her course, however abruptly."); *Complaint of B.F.T. No. Two Corp.*, 433 F. Supp. 854, 868 (D.C. Pa. 1977) (holding that the statutory duty of the overtaken vessel to maintain her course and speed "does not arise until the overtaking vessel has made her presence known by signaling her intention to pass"); *Williams-McWilliams Indus., Inc., v. F & S Boat Corp.*, 286 F. Supp. 638, 641 (D.C. La. 1968) ("[O]nce the [overtaken vessel] assented to the passing, she had the duty to keep her course and speed . . . ."); *In Re Landi Petition*, 194 F. Supp. 353, 361 (D.C. N.Y. 1960) ("[T]he duty of the [overtaken vessel] to maintain her course and speed did not exist until the overtaking vessel signaled her presence.").

Plaintiff notes that the authorities are not uniform regarding the duties of overtaken vessels, and cannot be altogether reconciled. *See The Industry*, 29 F.2d at 30 (citing cases). In particular, Plaintiff notes that in *Robinson v. Detroit & C Steam Nav. Co.*, 73 F. 883 (6th Cir. 1896), the court held both the overtaking vessel and the overtaken vessel liable, despite the failure of the overtaking vessel to give a signal. *Id.* at 892. *Robinson* is distinguishable on its facts. In *Robinson* the overtaken vessel was deemed liable not because it failed to maintain its course and speed as required by Rule 17, but because it was not properly manned and did not have a lookout, in direct violation of applicable regulations. *Id.* at 893.

There is no evidence in this case that the Mastercraft gave any signal of its intention

13

to overtake the Sea-Doo. Accordingly, no duty arose on the part of the Sea-Doo under Rule 17 to maintain course and speed. Defendant Jerovsek is accordingly entitled to summary judgment on Plaintiff's claims under Rule 17.

Plaintiff's admiralty claims, however, are not limited to Rule 17. Plaintiff has also alleged that Robbie violated other Inland Navigational Rules relating to a vessel's obligation to maintain a proper look-out (Rule 5), to proceed at a safe speed (Rule 6), to determine if there is a risk of collision (Rule 7) and to take action to avoid collision (Rule 8). Resolution of these claims depends on material issues of fact. For example, Plaintiff contends that Robbie violated Rule 6, which required him to proceed at a safe speed. Plaintiff characterizes the Sea-Doo's slowing down as the marine equivalent to slamming on one's brakes in rush hour traffic. Jerovsek's expert, on the other hand, has concluded that the Sea-Doo did not suddenly stop in the path of the Mastercraft. Rather, he opines that Robbie was far enough in front of the Mastercraft that the Mastercraft had ample time to avoid the collision. (Skogen Rpt. 5-6.) Thus, while there appears to be agreement that Robbie slowed down in front of the Mastercraft, there is a genuine dispute as to whether or not that action was negligent or unsafe. There is also a question of fact as to whether Robbie knew that the Mastercraft was directly behind him. The teenage passengers of the Mastercraft testified that the Sea-Doo passed them and pulled in front of them, while Hulings testified that the Sea-Doo crossed the Mastercraft's wake while the Mastercraft was heading 90 degrees away from the Sea-Doo's course, and that the Mastercraft circled and came up behind the Sea-Doo.

14

These and other disputed issues of fact are material to Plaintiff's remaining admiralty and negligence claims.  Accordingly, to the extent Defendant Jerovsek has requested summary judgment on admiralty rules other than Rule 17, the request must be denied.

For the foregoing reasons, Alexis and Mark Youngberg's motion for summary judgment on Jerovsek's negligence claim against them (Dkt. No. 64) will be denied.  Alexis's motion for partial summary judgment on her claim against Jerovsek (Dkt. No. 75) will be denied.  Jerovsek's cross-motion for partial summary judgment on Alexis's admiralty claims (Dkt. No. 79) will be granted as to the alleged Rule 17 violation and denied in all other respects.

An order consistent with this opinion will be entered.


Dated: February 21, 2012                    /s/ Robert Holmes Bell
                                            ROBERT HOLMES BELL
                                            UNITED STATES DISTRICT JUDGE